UNITED STATES of America,
Plaintiff-Appellee,

v.

Frank BATES, Jr.,
Defendant-Appellant.

No. 75–3187
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Feb. 6, 1976.

Floyd W. Freed, III, Donald W. Bankston, Houston, Tex., for defendant-appellant.

Edward B. McDonough, Jr., U. S. Atty., James R. Gough, Asst. U. S. Atty., Houston, Tex., for plaintiff-appellee.

Before GEWIN, GOLDBERG and DYER, Circuit Judges.

PER CURIAM:

Frank Bates was convicted by a jury of the importation of 2,798 Ionamin capsules and 11 bottles of Robitussin A–C cough syrup, both controlled substances under 21 U.S.C. § 952(a), and of possession of the capsules with intent to distribute, a violation of 21 U.S.C. § 841(a)(1). In this appeal he argues that he was the victim of an illegal search and thus that his motion to sup-

---

* Rule 18, 5 Cir.; see *Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.,* 5 Cir., 1970, 431 F.2d 409, Part I.

press the contraband should have been granted. We find that the challenged search was conducted lawfully and we affirm the conviction.

The district court made the following findings regarding the search:

For purposes of the Motion to Suppress it appears that on April 14, 1975, at approximately 2:30 a. m. the Defendant Frank Bates, Jr. arrived at the Gateway International Bridge from the Republic of Mexico driving a 1974 Cadillac. Customs Inspector Mariam Medley, on finding out the Defendant's name, sent the Defendant to secondary inspection pursuant to a prior request from Drug Enforcement Administration Agent D'Antuono. At this point in time the Defendant was out on bond on a previous narcotics case and Agent D'Antuono had requested that he be notified in the event that the Defendant presented himself to any of the ports of entry along the Rio Grande River. Under the conditions of the Defendant's bond, he could not go to Mexico without prior approval from this Court.

Agent D'Antuono immediately came to the Gateway International Bridge and arrested the Defendant for violation of the conditions of his bond and took him to the Cameron County Jail. Because of the Defendant's prior record of narcotics dealings in the Republic of Mexico, Agent D'Antuono, along with Customs Agents, wanted to inspect the Defendant's vehicle. However, at this early hour of morning there was insufficient personnel to perform a search of the car immediately and it was at that time thought that the search would have to be delayed until 6:00 a. m. when more inspectors would come on duty. However, the Customs Inspectors were able to start searching the Cadillac sooner than they had originally thought and by the time that Agent D'Antuono had returned from leaving the Defendant at the Cameron County Jail the Customs Inspectors, principally Inspector

Nowell, had discovered that the left rear tire of the automobile was visually different from the three remaining tires in that there was grease on the tire which indicated that the tire had been recently handled. Upon returning to the bridge, Agent D'Antuono assisted Agent Nowell in removing the tire. Agent D'Antuono bounced and shook the tire and noticed that it felt too heavy for a tire filled only with air. Agent D'Antuono then went back to the Cameron County Jail to get the Defendant and thereafter returned to the bridge to open the tire in the Defendant's presence. At approximately 3:45 a. m. Agent D'Antuono and Inspector Nowell opened the tire and therein found 2,798 ionamin capsules and 11 bottles of Robitussin A–C cough syrup.

■■ The district court denied the motion to suppress the evidence. Appellant argues this denial was error, since D'Antuono was an Agent of the Drug Enforcement Administration, an agency not specifically empowered by statute to conduct border searches. We need not reach the question of the scope of the authority of the D.E.A. because, as the district court found, the search was "conducted jointly by Agent D'Antuono . . . and Customs Inspector Nowell . . . ." and thus the search was under "the aegis of the Customs Officer." Border searches conducted by customs inspectors are governed by the test of "reasonable suspicion" rather than by the test of "probable cause." *United States v. Chiarito*, 5 Cir. 1975, 507 F.2d 1098. The fact that Bates had violated the conditions of his bond in a previous narcotics case by entering the Republic of Mexico and the distinctive appearance of the left rear tire afforded ample basis for a reasonable suspicion in this case.

■■ Appellant also argues that because he was arrested for a bond violation, and because the customs officers conducted a preliminary search, the search in which the contraband was discovered should be tested by "search inci-

dent to an arrest" standards rather than by border search standards. It appears, however, that the car was never released from the immediate border area, that a thorough search was planned from the outset, and that the contraband was discovered within 75 minutes of Bates' arrival at the border. This was a valid border search, *see United States v. Chiarito, supra,* and so we need not decide whether it could be justified as a search incident to an arrest.

Affirmed.