**UNITED STATES of America, Appellee,**

v.

**Charles Raymond WILLIAMS, Appellant.**

No. 75–1566.

United States Court of Appeals,
Ninth Circuit.

Jan. 26, 1976.

Rehearing and Rehearing En Banc
Denied March 29, 1976.

Lewis A. Wenzell (argued), Federal Public Defender, San Diego, Cal., for appellant.

James Brannigan, Asst. U. S. Atty. (argued), San Diego, Cal., for appellee.

## OPINION

Before DUNIWAY and ELY, Circuit Judges, and WONG,* District Judge.

ELY, Circuit Judge:

Appellant was tried with two co-defendants on a charge of conspiring to import and distribute marihuana in violation of 21 U.S.C. Sec. 846 and 963. The jury failed to reach a verdict, and a mistrial was declared. Thereafter, appellant waived another jury trial and was convicted by the judge on the basis of the evidence adduced at the previous jury trial. He was sentenced, pursuant to 18 U.S.C. Sec. 4208(a)(2), to imprisonment for four years. The court also imposed a special two-year parole term, as prescribed by 21 U.S.C. Sec. 841(b)(1)(B). This appeal followed.

A fourth co-defendant, one Ettinger, testified for the prosecution. He stated that in January, 1974, appellant and his partner, Meyers, had asked Ettinger to help them find a pilot to fly about eight tons of marihuana from Mexico. On March 18, 1974, Ettinger met a man named Per Jensen, an undercover pilot-agent of the Drug Enforcement Administration (DEA) and asked him if he were interested in the job. Jensen answered affirmatively, and Ettinger introduced him to Meyers.

Ten days later, on March 28th, Ettinger and Jensen drove to the Banning, California, airport, where Ettinger rented a hangar which Meyers had told him would be used for unloading the marihuana. Ettinger testified that later that day he gave the hangar key to either Meyers or appellant, but he could not recall which. On the morning of March 29th, Meyers and appellant picked up Jensen in appellant's car. Meyers introduced appellant as his partner. They drove to the Long Beach airport, loaded Jensen's (DEA's) plane, and Jensen and Meyers took off for Hermosillo, Mexico. In compliance with Meyers' expressed desire, Jensen flew the shortest route, which took the plane over the Southern District of California. DEA agents followed them in another plane.

When the plane landed in Mexico, Meyers was arrested by Mexican police. The next day, March 30th, DEA agents, Mexican police, and Meyers proceeded to the pickup site, where the authorities discovered 200 pounds of marihuana. The DEA agents then returned to Hermosillo. Meyers remained in Mexican custody. On the morning of March 31st, Agent Jensen telephoned Ettinger and told him that the plane would arrive at the Banning airport around noon. In attempting to leave Hermosillo, the DEA plane piloted by Jensen had engine trouble and was left in Mexico. Jensen returned with three agents to the Long Beach airport, where he was dropped off. The other agents then flew to Banning, arriving at about 4 p. m.

The agents parked the plane in front of the hangar. After a short pause, Agent Shaw removed the open padlock and the agents opened the door and went inside. There, they discovered a yellow van which they seized and searched. They found a duplicate key to the ignition and a note in appellant's handwriting on the seat of the van instructing them to proceed to a motel. Enclosed with the note were keys to the motel room and to the hangar.

---

* Honorable Dick Yin Wong, United States District Judge, District of Hawaii, sitting by designation.

Appellant challenges the laying of venue in the Southern District of California and the District Court's denial of his motion to suppress the evidence obtained in the warrantless search of the hangar and vehicle.

■ As to venue, appellant argues that there was an insufficient nexus between the Southern District of California and the overt act charged in the indictment—flying over the Southern District enroute to obtain the marihuana.[1] We do not agree. Our Court indicated in *United States v. Trenary,* 9 Cir., 473 F.2d 680 (1973), that venue for conspiracy may be laid in a district through which conspirators have passed on their way to obtain contraband. Since the navigable airspace above a district is as much a part of it as a highway running through it, the fact that appellant's co-conspirator, Meyers, flew over the district rather than driving through it is of little significance.[2] *United States v. Barnard,* 490 F.2d 907 (9th Cir.), *cert. denied,* 416 U.S. 959, 94 S.Ct. 1976, 40 L.Ed.2d 310 (1974), does not require a different result.[3] Therefore, venue in the Southern District was proper.

A more serious question is presented by appellant's contention that the District Court erred in denying his motion to suppress on the ground that he failed to prove standing. Defendant rested his proof of standing on an affidavit.[4] The Government objected, contending that it had the right to cross-examine appellant as to the statements in the affidavit. When appellant refused to testify, the District Judge denied the motion.

Appellant asserts that because the Government did not dispute the truth of the statements in his affidavit, he was not legally required to take the stand and testify in order to establish standing. As the Government conceded during oral argument, an undisputed affidavit, or undisputed affidavits, alleging facts that demonstrate a legitimate proprietary or possessory interest in the premises searched, could establish one's standing without his being

---

1. Appellant also argues that because the conspiracy statutes under which he was charged, 21 U.S.C. Sec. 846 and 963, have no overt act requirement, venue could only be laid in the district wherein the conspiracy was formed. This argument is without merit. *See Hyde v. United States,* 225 U.S. 347, 365, 32 S.Ct. 793, 56 L.Ed. 1114 (1912).

2. Of course, we might very likely reach a different conclusion were there evidence that the pilot, a government agent, deliberately followed a circuitous route so that the prosecution could lay venue in a district of its own selection and otherwise totally removed from the actions of the conspirators.

3. In *Barnard* the precise question presented here did not arise because there was an obviously sufficient nexus to support the conspiracy count, and the court was concerned with whether overflight of a contraband-laden aircraft would support venue on the substantive counts of possession and importation.

4. The affidavit stated, in pertinent part:
   3. That at the time of the entries, searches and seizures in this case, he [appellant] had the use of, had entered and used, and anticipated further use of hanger [sic] A–2 at the Banning Airport.
   4. That this use of the hanger [sic] was with the full permission of the lessee (and he believes the owner) of said hanger [sic].
   5. That your affiant had the key to said hanger [sic] allowing him unlimited entry and access thereto.
   6. That during the aforementioned times, your affiant had full access to, had used and expected to use and have access to the van inside the aforementioned hanger [sic].
   7. That your affiant had the key to said van and access thereto and his use and access to the van were with full permission of the lessee (and he believes the owner) thereof.
   8. That your affiant by reason of these facts had a possessory interest in said hanger [sic] and van and fully expected that his or any activities and/or any property therein would be private and not open to public view save as to those persons personally granted permission by him to enter and observe said activities or property.
   9. That your affiant at no time gave permission or consent to any law enforcement agent to enter said hanger [sic] or van, make observations or searches therein, or to enter, search or seize any property therein.
   10. That your affiant had a full expectation of privacy, for his activities in the aforementioned hanger [sic] and van.
   11. That for these reasons, your affiant believes he has standing to contest what he believes to be the unlawful entries, searches and seizures in and of the aforementioned hanger [sic] and van.

required to testify. But the Government contends that it did, in fact, challenge appellant's affidavit and thereby put him to proof of his declarations.

 Certainly, neither *Jones v. United States,* 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), nor *Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), requires that in all cases a defendant must himself testify at a suppression hearing in order to establish his standing. Uncontroverted facts set forth by affidavit may well suffice.[5] But in the present case, even if appellant's affidavit were found to be unchallenged, it would not be sufficient to establish the required standing. Appellant's assertions that he had used or intended to use the hangar and van, possessed keys to both at some point, and had an expectation of privacy in them are vague and conclusory. The affidavit names neither the lessee nor the owner of the premises, from one of whom the appellant necessarily acquired whatever proprietary or possessory interest he asserted. Deprived of the opportunity to cross-examine the appellant, the prosecution was apparently also deprived of the means by which to challenge the appellant's factual claims. The facts alleged in the affidavit are insufficient to prove a "cognizable privacy interest" in the premises which would entitle appellant to challenge the search. *See United States v. Hunt,* 505 F.2d 931 (5th Cir. 1974), *cert. denied,* 421 U.S. 975, 95 S.Ct. 1974, 44 L.Ed.2d 466 (1975).

Affirmed.

---

**5.** We emphasize, however, that the decision to require a defendant to testify at a suppression hearing lies, to some extent, within the discretion of the trial judge, and we would not deny his authority to require such testimony if the Government is able to advance reasonably adequate reasons for his doing so.