**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Peter Albert SCHOOR, Defendant-Appellant.**

No. 78–2435.

United States Court of Appeals, Ninth Circuit.

June 4, 1979.

Yale T. Freeman, Hirschhorn & Freeman, Miami, Fla., for defendant-appellant.

Joseph M. Burton, Asst. U. S. Atty., San Francisco, Cal., for plaintiff-appellee.

Before DUNIWAY and KENNEDY, Circuit Judges, and BONSAL,* District Judge.

KENNEDY, Circuit Judge:

Schoor appeals from a conviction for conspiracy to import heroin into the United States and to possess and distribute heroin, in violation of 21 U.S.C. §§ 846 and 963. Finding no error, we affirm.

On February 10, 1978, Drug Enforcement Administration (DEA) officials in Bangkok, Thailand, were notified that local authorities had seized approximately 4500 grams of heroin concealed inside a shipment of transistor radios destined for New York. Benedict, an American citizen in Bangkok, was arrested in conjunction with that shipment. He implicated Peter Albert Schoor and Rudolph Hunfeld in the heroin smuggling venture. Benedict also told DEA agents in Bangkok that Schoor and Hunfeld were en route to the United States.

This information was sent to DEA agent Ruzzamenti in San Francisco, together with advice that Schoor and Hunfeld were scheduled to arrive at San Francisco International Airport from Bangkok at 10:00 a. m. the same day. Ruzzamenti advised customs officials of this and suggested the two passengers be searched as they might be carrying narcotics. He further instructed Customs to look for air cargo bills and other documents of radio shipments in defendants' possession.

Upon arrival in San Francisco, defendants were searched by customs officials. Agent Ruzzamenti was present during the searches, and he inspected the items found on the two defendants. The searches disclosed that Schoor was carrying airway bills relating to earlier shipments of radios and other items from Thailand, as well as air tickets for himself and Hunfeld for a flight from Bangkok to Miami via San Francisco. Hunfeld was carrying airway bills apparently relating to the radios seized in Thailand. Once reviewed all documents were returned to the defendants.

Schoor and Hunfeld were released by Customs and immediately were arrested by the DEA agents for conspiracy to smuggle heroin into the United States. The documents discovered by the customs search were seized by DEA agents incident to the arrests. Appellant contends first that the airport search violated his fourth amendment rights because it was not limited to a search for contraband and because it was conducted by customs officers at the behest of Drug Enforcement Administration agents, who themselves lacked probable cause to search.

It is well established that "searches made at the border, pursuant to the long-standing right of the sovereign to protect itself by stopping and examining persons and property crossing into this country, are reasona-

---

* Honorable Dudley B. Bonsal, United States District Judge for the Southern District of New York, sitting by designation.

ble simply by virtue of the fact that they occur at the border . . . ." *United States v. Ramsey*, 431 U.S. 606, 616, 97 S.Ct. 1972, 1979, 52 L.Ed.2d 617 (1977). *Accord, Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); *Boyd v. United States*, 116 U.S. 616, 623, 6 S.Ct. 524, 29 L.Ed. 746 (1886). Border searches, whether or not made pursuant to probable cause or a warrant, are *per se* reasonable under the fourth amendment, absent special circumstances not present here. *Cf. United States v. Cameron*, 538 F.2d 254 (9th Cir. 1976).

■ Here there is no dispute that the search was conducted at an international border by customs officers legally entitled to search persons entering the United States. That the search was made at the request of the DEA officers does not detract from its legitimacy. Suspicion of customs officials is alone sufficient justification for a border search. *See United States v. Rodriguez*, 592 F.2d 553, 556 (9th Cir. 1979). The source of that suspicion is irrelevant in sustaining the search. *Cf. United States v. Rivera-Marquez*, 519 F.2d 1227 (9th Cir. 1975) (search based on informer's tip).

■ Moreover, the border search was legitimate in scope. We recognize that the primary purpose of a border search is to seize contraband property unlawfully imported or brought into the United States. *See, e. g., Alexander v. United States*, 362

F.2d 379, 382 (9th Cir.), *cert. denied*, 385 U.S. 977, 87 S.Ct. 519, 17 L.Ed.2d 439 (1966). However, where customs officers are authorized to search for material subject to duty or otherwise introduced illegally into the United States [1] and they discover the instrumentalities or evidence of crimes, they may seize the same. *Maguire v. United States*, 396 F.2d 327, 330 (9th Cir. 1968), *cert. denied*, 393 U.S. 1099, 89 S.Ct. 897, 21 L.Ed.2d 792 (1969).

Thus, the customs officials here were themselves entitled to seize the air cargo bills and other documents, having been informed of their existence and having been notified that they were the instrumentalities of a crime involving the illegal importation of heroin. *See Maguire v. United States, supra. Cf. Warden v. Hayden*, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967) (rejecting distinctions for fourth amendment purposes among seizures of evidence, instrumentalities, fruits, and contraband). It is of no consequence that the customs officers did not effect the arrest and seizure themselves, but rather permitted the DEA agents to do so. Nor does the presence of the DEA at the search mandate the suppression of the items seized. *See United States v. Carter*, 592 F.2d 402 (7th Cir. 1979); *United States v. Bates*, 526 F.2d 966 (5th Cir. 1976) (border search under the aegis of the customs officer not invalidated by presence or participation of DEA agent).[2] We hold the search was valid and

---

**1.** 19 U.S.C. § 482 provides:

Any of the officers or persons authorized to board or search vessels may stop, search, and examine, as well without as within their respective districts, any vehicle, beast, or person, on which or whom he or they shall suspect there is merchandise which is subject to duty, or shall have been introduced into the United States in any manner contrary to law, whether by the person in possession or charge, or by, in, or upon such vehicle or beast, or otherwise, and to search any trunk or envelope, wherever found, in which he may have a reasonable cause to suspect there is merchandise which was imported contrary to law; and if any such officer or other person so authorized shall find any merchandise on or about any such vehicle, beast, or person, or in any such trunk or envelope, which he shall have reasonable cause to believe is

subject to duty, or to have been unlawfully introduced into the United States, whether by the person in possession or charge, or by, in, or upon such vehicle, beast, or otherwise, he shall seize and secure the same for trial.

**2.** Moreover, on this record we think the DEA agents had probable cause to arrest the defendants based on the information supplied by Benedict. That information was independent of any information obtained as a result of the border search. It carried its own indicia of reliability and was sufficient to support the arrests. *See Louie v. United States*, 426 F.2d 1398, 1401 (9th Cir. 1970); *Musgrove v. Eyman*, 435 F.2d 1235, 1238 (9th Cir. 1970); *United States v. Rodriguez*, 438 F.2d 1164, 1166 (9th Cir. 1971); *United States v. Hills*, 464 F.2d 1023, 1024 (9th Cir. 1972). *But see Pulido v. United States*, 425 F.2d 1391 (9th Cir. 1970).

the documents discovered by the search were seized incident to a lawful arrest and were admissible at trial.[3]

Schoor next asserts that the evidence was insufficient to support the conviction, there being little circumstantial and no direct evidence to link him to the heroin smuggling conspiracy. When viewed in a light most favorable to the government as the prevailing party, *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942), the evidence, although not overwhelming, is sufficient to support the conviction. The Government established the existence of a conspiracy between Benedict and Hunfeld to smuggle heroin into the United States. Once such a conspiracy was proven, evidence establishing beyond a reasonable doubt a knowing connection of the defendant with the conspiracy, even though the connection is slight, is sufficient to convict him of knowing participation in the conspiracy. *United States v. Dunn*, 564 F.2d 348, 357 (9th Cir. 1977).

We are satisfied that the jury could find beyond a reasonable doubt that Schoor knowingly took part in the conspiracy to smuggle heroin. Schoor had employed Benedict as his "engineer" and together they had visited the Tanin Radio plant in Bangkok, where they had purchased ten radios. Schoor subsequently hired Hunfeld, and together they bought four more radios from the Bangkok plant. These were the four radios in which Bangkok officials found the concealed heroin.[4] Moreover, Schoor twice had been seen in Hunfeld's Bangkok apartment building, once wheeling a hand truck containing several brown boxes.[5] All the radios that were seized by Bangkok officials had been shipped under a fictitious name and were destined for Schoor's freight forwarder in New York and ultimately to Schoor himself in Florida.[6] In addition, during this immediate period Schoor had purchased a large quantity of quinine, which is commonly used as a cutting agent for heroin in the Miami, Florida, area. Finally, DEA agents apprehended Schoor and Hunfeld entering the United States at the San Francisco International Airport at about the same time the heroin-laden radios were to arrive in New York. These factors are sufficient to link Schoor to the conspiracy under the *Dunn* test. *United States v. Dunn, supra.*

Schoor also contends that venue in the Northern District of California was not proper, and that even if it were, the district court abused its discretion in denying his

---

Additional information received pursuant to the customs search did not detract from the existence of probable cause to arrest or taint the arrest. *See United States v. Marchand*, 564 F.2d 983, 1002 (2d Cir. 1977), *cert. denied*, 434 U.S. 1015, 98 S.Ct. 732, 54 L.Ed.2d 760 (1978). *See also United States v. Chatman*, 573 F.2d 565, 567 (9th Cir. 1977); *Busby v. United States*, 296 F.2d 328, 332 (9th Cir.), *cert. denied*, 369 U.S. 876, 82 S.Ct. 1147, 8 L.Ed.2d 278 (1961).

3. The Court's decision in *Ramsey, supra*, is not contrary. That case concerns sealed international letter mail. Here the documents were produced during a legitimate border search. Even if the documents involved here carry with them some expectation of privacy, we are convinced that the information possessed by the customs agents was sufficient to pass the test enunciated in *Ramsey* for their seizure.

4. Hunfeld alone, purportedly acting as Schoor's agent, earlier had bought 16 radios which were also found to have been used to conceal heroin.

Schoor attacks the chain of custody of the seized radios, claiming that there is no proof that the radios at the police station, whose serial numbers matched the serial numbers on the radios purchased by Hunfeld alone and by Schoor and Hunfeld, were the same as the radios earlier seized at the Bangkok airport and the Pan Am freight offices. A Thai official testified on this point, however, and outlined police procedures that were adequate to prove that the radios seized from the airport and the airline offices were the same ones in which the concealed heroin was discovered.

5. Schoor admitted to having visited Hunfeld's apartment to deliver the radios but denied having seen any heroin.

6. Although the shipping documents for these radios did not explicitly identify Schoor as the intended recipient, the freight forwarder, George Collina, testified that he would have known that they were for Schoor because Collina earlier had processed similar shipments for Schoor and would have contacted Schoor for instructions regarding the February shipment.

motion for change of venue on the grounds that business records, allegedly vital to his defense, were located in Florida. We have held consistently that venue is appropriate in any district where an overt act committed in the course of the conspiracy occurred. *See e. g., United States v. Williams*, 536 F.2d 810 (9th Cir.), *cert. denied*, 429 U.S. 839, 97 S.Ct. 110, 50 L.Ed.2d 106 (1976). Schoor's and Hunfeld's reentry into the United States at San Francisco is sufficient to constitute such an overt act, because they entered the Northern District to catch a connecting flight for Miami, where they intended to pick up the radios containing the heroin.[7] Venue was thus proper in that district.

■ The court did not abuse its discretion in denying the motion for change of venue. Although it would have been more convenient for Schoor to have been tried either in Florida or in New York, because his business records were in Miami and his character witnesses would have come from New York or Miami, the convenience of the defendant is not the only factor to be considered by the trial court. The convenience of the Government, which is also a factor, *United States v. Testa*, 548 F.2d 847, 857 (9th Cir. 1977), weighed in favor of trial in San Francisco. Most of the Government's evidence and witnesses came from Thailand and from San Francisco.

Even though Schoor's business records were in Miami, it is not clear that access to those records would have enabled Schoor to refute or negate the effect of the Government's most damaging evidence—the purchase of the quinine and purchase of and shipping instructions for the radios. Moreover, if the records were indeed important for Schoor's defense, a motion for a continuance to enable their procurement would have been in order. No such motion was made.

■ Schoor's final contention is that various comments by the trial judge in the presence of the jury deprived him of due process of law and effective assistance of counsel. We have carefully reviewed the record and conclude that the court's comments were within the bounds of acceptable judicial comment and that any prejudice flowing therefrom was cured by the court's timely and several cautionary instructions.

AFFIRMED.

---

7. In *Williams*, for example, merely passing through the district en route to obtain contraband was a sufficient nexus for venue purposes. *Id.* at 812.