# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

August Term, 2014

(Argued: February 2, 2015          Decided: September 29, 2015)

Docket No. 14-338-cr

_____

UNITED STATES OF AMERICA,

*Appellee,*

v.

DAVID LEVY,

*Defendant-Appellant.*[*]

_____

Before:

HALL and LOHIER, *Circuit Judges*, and MEYER, *District Judge*.[**]

A United States Customs officer at Miami International Airport examined and photocopied a hardcopy notebook belonging to defendant-appellant David Levy, who had arrived at the airport from a trip abroad.

---

[*] Although the initial caption on appeal identified the Government as an "Appellee-Cross-Appellant," the Government is not pursuing a cross-appeal. The Clerk of Court is therefore respectfully requested to amend the case caption as set forth above.

[**] The Honorable Jeffrey Alker Meyer of the United States District Court for the District of Connecticut, sitting by designation.

Before trial, Levy moved to suppress the photocopy of the notebook. The United States District Court for the Southern District of New York (Crotty, *J.*) denied the motion on the ground that the officer's search, though not routine, was based on reasonable suspicion of Levy's participation in criminal activity. Because the District Court properly denied the motion to suppress, we affirm.

MARC FERNICH, Law Office of Marc Fernich, *for Defendant-Appellant.*

HOWARD S. MASTER (Carrie H. Cohen, Brian A. Jacobs, *on the brief*), *for* Preet Bharara, United States Attorney for the Southern District of New York, New York, NY, *for Appellee.*

LOHIER, *Circuit Judge*:

The principal question presented is whether United States Customs officers at an international airport may lawfully and without a warrant examine and photocopy a document that belongs to a traveler entering the United States if the officers have reasonable suspicion on the basis of information supplied from another federal agency that the traveler is engaged in criminal activity unrelated to contraband, customs duties, immigration, or terrorism. We hold that such a search is lawful under the border search doctrine and that the District Court properly denied the defendant's motion to suppress. We therefore affirm.

We dispose of Levy's remaining claims on appeal in a separate summary order filed simultaneously with this opinion.

## BACKGROUND

On December 17, 2011, following a business trip to Panama, David Levy returned to the Miami International Airport to face criminal charges that he expected would be leveled against him.[1]  By then, Levy was the target of a criminal investigation into a series of stock manipulation schemes that nearly a year earlier had resulted in the indictment of Levy's wife.  At the airport, United States Customs and Border Protection (CBP) officers detained Levy and escorted him to a holding area without interrogating him.  The officers apparently had received information about the investigation of Levy from a Drug Enforcement Administration (DEA) task force,[2] which for reasons not relevant to this appeal was primarily responsible for looking into Levy's role in the manipulation schemes. Outside of Levy's presence, the officers inspected Levy's luggage, focusing on a spiral-bound notebook that contained eighteen pages of Levy's handwritten notes on various subjects, including travel information,

---

[1] Levy's lawyer had previously contacted federal prosecutors to discuss the potential charges against Levy.

[2] Although the task force appears to have been under the control of the DEA, it included agents with the Bureau of Immigration and Customs Enforcement.

business contacts, bank and trading account data, and limited details of Levy's personal affairs. One of the CBP officers examined and photocopied the notebook. After about two hours, the CBP officers returned the original notebook and other items to Levy, who was still in the holding area, and allowed him to leave the airport.

Less than seventy-two hours later, on December 20, 2011, Levy was indicted on charges of securities fraud and conspiracy to commit securities fraud and wire fraud. In a superseding indictment filed June 28, 2012, Levy was also charged with conspiracy to commit money laundering, as well as other crimes in which the Government claimed he was engaged at the time Levy's notebook was examined and photocopied. All of the charges arose from Levy's participation in the stock manipulation schemes.

Before trial, Levy moved to suppress the photocopy of the notebook that the CBP officer had inspected. The District Court denied the motion under the border search doctrine. As relevant here, the District Court agreed with Levy that the search of the notebook was a "non-routine" border search because "[t]he close reading and photocopying of an

entrant's documents goes beyond the general searching one expects at a point of entry" and may "intrude greatly on a person's privacy." United States v. Levy, No. 11-cr-62-PAC, 2013 WL 664712, at *6, *12 (S.D.N.Y. Feb. 25, 2013). But it held that the search was still justified under the Fourth Amendment because the CBP officers reasonably suspected that Levy was "engaged in a stock fraud conspiracy." Id. at *12.

In denying the motion, the District Court also rejected Levy's argument that CBP officers could not search material unless it related to a crime that CBP is authorized by regulation to investigate – that is, a crime relating to contraband or dutiable merchandise. To the contrary, the District Court determined, none of the cases upon which Levy relied in advancing this argument "limit[ed] the crimes for which customs agents may conduct non-routine searches if they have a reasonable suspicion." Id.

At trial, the parties stipulated that a photocopy of the notebook could be introduced as evidence. The Government relied on the evidence with some effect. Among other things, it used the names listed in the notebook to tie Levy both to various illegal trades and to certain

unindicted co-conspirators who participated in the securities fraud schemes. The Government also referred to the notebook in closing argument, pointing out that Levy's forgery of certain relevant documents could be proven by the handwriting in the notebook.

Levy was convicted of all the counts against him and sentenced principally to a term of 108 months' imprisonment. This appeal followed.

## DISCUSSION

In evaluating the denial of a motion to suppress evidence, we review the district court's factual findings for clear error and its conclusions of law de novo. United States v. Foreste, 780 F.3d 518, 523 n.3 (2d Cir. 2015). When the evidence at issue derives from a border search, we recognize the Federal Government's broad plenary powers to conduct so-called "routine" searches at the border even without "reasonable suspicion that the prospective entrant has committed a crime." Tabbaa v. Chertoff, 509 F.3d 89, 97-98 (2d Cir. 2007); see United States v. Montoya de Hernandez, 473 U.S. 531, 538 (1985) ("Routine searches of the persons and effects of entrants are not subject to any requirement of reasonable suspicion, probable cause, or warrant . . . ."). It is well established that the Customs

area of an international airport is the functional equivalent of a border for purposes of the border search doctrine. See, e.g., United States v. Irving, 452 F.3d 110, 123 (2d Cir. 2006).

Had the CBP officer merely skimmed the notebook and returned it to Levy without copying it, we have no doubt that the inspection would have been routine. Cf. United States v. Arnold, 533 F.3d 1003, 1009 (9th Cir. 2008) (holding border search of an electronic device permissible even without reasonable suspicion where "CBP officers simply had [the traveler] boot [the laptop] up, and looked at what [he] had inside"). Whether searching and copying the notebook here constitutes a "routine" border search that could be conducted without reasonable suspicion is somewhat more debatable.[3] But for now we avoid resolving that question

---

[3] We question whether a Customs official's inspection, copying, and subsequent return of a document in a traveler's luggage at the border can be so "intrusive" that it becomes a "non-routine" search requiring reasonable suspicion. Like the Supreme Court, see United States v. Flores-Montano, 541 U.S. 149, 152 (2004), we have suggested that the label "non-routine" should generally be reserved for intrusive border searches of the person (such as body-cavity searches or strip searches), not belongings, see United States v. Charleus, 871 F.2d 265, 267 (2d Cir. 1989); see also United States v. Irving, 452 F.3d 110, 123-24 (2d Cir. 2006) (explaining that routine searches may include searches of a person's luggage, personal belongings, outer clothing, and the contents of a purse, pockets, and shoes, but

because the record of the Government's criminal investigation of Levy prior to the inspection of his notebook supports the District Court's ruling that the inspection was justified by reasonable suspicion.

The Supreme Court has instructed that "the level of suspicion the [reasonable suspicion] standard requires is considerably less than proof of wrongdoing by a preponderance of the evidence, and obviously less than is necessary for probable cause."  Navarette v. California, 134 S. Ct. 1683, 1687 (2014) (quotation marks omitted).  Reasonable suspicion requires only "a particularized and objective basis for suspecting the particular person stopped of criminal activity."  Id. (quotation marks omitted).

The CBP officer had such a basis in this case.  Although Levy disputes this conclusion, a review of the allegations in the initial underlying indictment against Levy (filed within days of the search) and the allegations in the subsequent, superseding indictment confirm that the search was justified by the CBP officer's reasonable suspicion of Levy's

declining to decide whether searches of computer diskettes found within luggage were routine or non-routine); United States v. Grotke, 702 F.2d 49, 51-52 (2d Cir. 1983) (routine search includes search of luggage and personal belongings, among other items).

ongoing criminal participation in securities fraud schemes. In fact, the level of suspicion was so high that Levy himself was aware of his status as a target of an ongoing federal investigation even prior to arriving at the airport, and his lawyer previously had contacted federal prosecutors about the investigation.

We also conclude that the CBP officer was entitled to rely on information provided by the DEA task force to justify the border search in this case. Official interagency collaboration, even (and perhaps especially) at the border, is to be commended, not condemned. Whether a Customs official's reasonable suspicion arises entirely from her own investigation or is prompted by another federal agency is irrelevant to the validity of a border search, which we have held "does not depend on whether it is prompted by a criminal investigative motive." United States v. Irving, 452 F.3d 110, 123 (2d Cir. 2006); see United States v. Schoor, 597 F.2d 1303, 1306 (9th Cir. 1979) (Kennedy, J.) ("That the search was made at the request of the DEA officers does not detract from its legitimacy. Suspicion of customs officials is alone sufficient justification for a border search."). We note, for example, that DEA or Federal Bureau of Investigation agents

"frequently assist customs officials in the execution of border searches."

Ali v. Fed. Bureau of Prisons, 552 U.S. 214, 232 (2008) (Kennedy, J.,

dissenting) (citing United States v. Gurr, 471 F.3d 144, 147-49 (D.C. Cir.

2006); United States v. Boumelhem, 339 F.3d 414, 424 (6th Cir. 2003);

Formula One Motors, Ltd. v. United States, 777 F.2d 822, 824 (2d Cir.

1985)). We see no constitutional reason to prevent these and other federal

law enforcement agents from also supplying information to Customs

officials in aid of a border search. Nor are Customs officials prevented by

the Fourth Amendment from conducting such a search merely because it

furthers another federal agency's criminal investigation.

Levy argues that border searches conducted by the CBP, even at the

prompting of another federal agency, should at least be confined to crimes

that a statute or regulation specifically authorizes CBP to investigate. We

recognize that CBP officers focus primarily on contraband, dutiable

merchandise, immigration fraud, and terrorism. See United States v.

Flores-Montano, 541 U.S. 149, 153 (2004); Tabbaa, 509 F.3d at 93. But (like

other federal law enforcement officers) CBP officers are neither expected

nor required to ignore tangible or documentary evidence of a federal

crime. They have the authority to search and review a traveler's documents and other items at the border when they reasonably suspect that the traveler is engaged in criminal activity, even if the crime falls outside the primary scope of their official duties. United States v. Gurr, the only other circuit court decision to have resolved this specific issue, is in accord. In Gurr, the D.C. Circuit explained:

> We recognize that the primary purpose of a border search is to seize contraband property unlawfully imported or brought into the United States. However, where customs officers are authorized to search for material subject to duty or otherwise introduced illegally into the United States and they discover the instrumentalities or evidence of crimes, they may seize the same.

471 F.3d at 149 (quoting Schoor, 597 F.2d at 1306); cf. United States v. Seljan, 547 F.3d 993, 1004 (9th Cir. 2008) (en banc) ("Seljan has not cited authority under the Fourth Amendment that required the agents to disregard evidence of other unlawful activity, even if the unlawfulness had nothing to do with transporting unreported monetary instruments.").

Because their conduct was fully supported by reasonable suspicion that Levy was engaged in a financial crime, the CBP officer in this case was entitled to inspect and copy the notebook as evidence of that crime.

Neither our case law nor the applicable regulations relating to CBP officers or border searches is to the contrary, and the District Court correctly denied Levy's motion to suppress the photocopy.

## CONCLUSION

For the foregoing reasons and those set forth in the accompanying summary order, we **AFFIRM** the judgment of conviction of the District Court.