UNITED STATES of America,
Plaintiff-Appellee,

v.

Pauline R. CORMIER,
Defendant-Appellant.

No. 80–5136.

United States Court of Appeals,
Fifth Circuit.
Unit B

March 16, 1981.

Mark A. Pizzo, Asst. Fed. Public Defender, Robert W. Knight, Federal Public Defender, Tampa, Fla., for defendant-appellant.

Gary L. Betz, U. S. Atty., Douglas J. Titus, Jr., Asst. U. S. Atty., Tampa, Fla., for plaintiff-appellee.

Before HILL, KRAVITCH and HATCHETT, Circuit Judges.

**KRAVITCH, Circuit Judge:**

Pauline Cormier appeals from her conviction for concealing or failing to disclose to the Social Security Administration her employment and earnings, with intent to secure fraudulently unauthorized Social Security benefits, in violation of 42 U.S.C. § 408(d).[1] Cormier, at her election, was tried by a magistrate, and found guilty. Judgment was affirmed by the district court.[2] On appeal she raises two arguments: 1) the agency's failure to comply with its own guidelines mandated dismissal, and 2) the evidence was insufficient to support her conviction. Rejecting both claims, we affirm.

Cormier first applied for Social Security survivors insurance benefits for herself and her three children on January 10, 1963, shortly after her husband's death, and was awarded and received benefits. In 1968 she began employment with the Social Security Administration and continued working there until June 25, 1971, when she left to open a card and gift shop. That business failed, and Cormier returned to work for the Social Security Administration on January 7, 1973.

During the period from 1968 through 1972 Cormier received and filed annual income reports with Social Security, as required by 42 U.S.C. § 403(h).[3] Due to the fact that her 1971 and 1972 earnings did not equal her anticipated earnings, she received a retroactive entitlement check in 1973 covering her loss of benefits for the two prior years. Cormier's oldest child, Ronald, stopped attending school full-time in 1972 and his eligibility terminated.[4]

---

1. 42 U.S.C. § 408(d) is set out *infra.*

2. She was given a sentence of six months which was probated.

3. 42 U.S.C. § 403(h)(1)(A), in 1967, stated:

    If an individual is entitled to any monthly insurance benefit under section 402 of this title during any taxable year in which he has earnings or wages ... in excess of the product of $125 or the exempt amount ... times the number of months in such year, such individual (or the individual who is in receipt of such benefit on his behalf) shall make a

report to the Secretary of his earnings (or wages) for such taxable year....

The figure of $125 was increased to $140 by the Amendments to the Act of 1968, to $175 by the 1972 Amendments, and to its present amount, $200, by the 1973 Amendments. (It was $100 in 1963 when Cormier first applied for benefits.)

4. He notified the Social Security Administration of this fact in March, 1972. A child of one entitled to receive Social Security benefits, who is himself not disabled, is entitled to receive such benefits if, *inter alia,* he has not attained the age of 18, or is a full-time student and has

During the years 1973 through 1978, after her return to the Administration, Cormier failed to file annual income reports although she continued to collect benefits for herself and two children. She testified at trial that she did not receive forms for such reports. (The Administration's general practice is to mail such forms to all benefit recipients.) In 1978, through "Project Match," the Department of Health, Education and Welfare program comparing federal employee rolls with federal beneficiary lists, the Department discovered that Cormier had been employed while collecting benefits from 1973 through 1978, during which period she had failed to report her earnings. Because Cormier's earnings during this time exceeded "allowable earnings," the amount she could earn and yet receive full benefits,[5] Cormier had received benefits in the amount of $10,385.90 to which she was not entitled.[6]

As a result of this discovery, agents of the Social Security Administration's Program Integrity Branch interviewed Cormier. Two months later she received a detailed account of her alleged overpayments, both the total and an itemized breakdown for the years 1973 through 1977. The letter also advised her of her available remedies: to request that the Social Security Administration re-examine its overpayment determination in order to assess its validity, and/or to request waiver, should the Administration conclusively determine that an overpayment had been made. A recipient could request waiver on the ground that repayment would create hardship, or that the overpayment was not the recipient's fault. Cormier also received a document entitled "Important Information About Your Review Rights." That form stated:

You may, anytime within 60 days of the date you receive this notice, request reconsideration of the overpayment determination and/or request that recovery of the overpayment be waived.... If you request a reconsideration and/or waiver within 30 days from the date of the enclosed notice, your right to review will take the form of a preadjustment review, and your benefits will not be reduced to recover the overpayment until a preadjustment review of your case has been completed.

The document advised that she would be entitled to a more formal "conference" were the decision at the preadjustment review adverse, at which she, with the benefit of representation, could testify and present witnesses. Finally, it informed her that she should return a "tear-off portion" if she desired preadjustment review:

If you wish to request either a reconsideration of the overpayment and/or you believe you meet the requirements for waiver, you should fill out this form and mail it to any social security office, or you may call or visit any social security office.

Cormier returned that portion of the form, as well as executing an additional form addressed solely to waiver applicants. The Social Security Administration, however, failed to grant Cormier preadjustment review, instituting criminal proceedings instead.

### Noncompliance with Regulations

█ Cormier first argues that the district court erred in failing to dismiss the information because the Social Security Admin-

not attained the age of 22. 42 U.S.C. § 402(d)(1)(B).

5. The "allowable earnings" provisions of 42 U.S.C. § 403 limit benefits in relation to one's earnings. When earnings exceed a certain level, all benefit payments cease. The "family maximum" provisions of the same section limit the amount of benefits a single family, regardless of the number of individual recipients in the unit, may receive.

6. Under the "family maximum" provision, Cormier would receive benefits despite her own earnings in certain instances. This was the case in 1971 when all three of her children still received benefits and the "family maximum" applied. It ceased to apply in 1972 when Ronald no longer received benefits. Hence, when Cormier initially reported that her expected earnings would exceed allowable earnings for 1972, she received no benefits. She received a retroactive payment after she reported that her earnings had been both less than the amount anticipated and less than allowable earnings.

istration contravened its own regulations by denying her request for an adjudicatory hearing before undertaking formal prosecution. The government asserts, alternatively, that no violation occurred but that even if breach did occur, internal regulations provide no rights to benefit recipients. We agree with the second contention.

The Social Security Claims Manual,[7] which sets forth internal agency procedures, provides:

§ 5502(c) Fraud Involved:

Where a violation of one of the criminal provisions of the act in connection with a claim is suspected and an overpayment exists, all appropriate post-adjudicative and recovery actions must be taken before referring the suspected violation through reviewing office channels to the U.S. Attorney or OPO, BRSI, Program Compliance Branch in accordance with §§ 7543 ff. Thus, action to recover an overpayment will be taken as described above and in the succeeding sections notwithstanding fraud involvement.

This provision unquestionably applied in Cormier's case, as she was eventually prosecuted for fraudulently receiving benefits to which she was not entitled. The Department thus violated internal regulations by instituting criminal proceedings against Cormier without first affording her informal review. Nonetheless, we conclude that this violation did not require dismissal of the charge against Cormier. In *United States v. Caceres*, 440 U.S. 741, 99 S.Ct. 1465, 59 L.Ed.2d 733 (1979), the Supreme Court refused to exclude evidence obtained in violation of Internal Revenue Service regulations. Although the Court stated that "[the judicial] duty to enforce an agency regulation is most evident when compliance with the regulation is mandated by the Constitution or federal law," 440 U.S. at 749, 99 S.Ct. at 1470, it indicated additional circumstances under which the duty would operate. None of those circumstances is present here: neither the Constitution nor statute mandates compliance with the Social Security Administration regulations at issue, nor can Cormier claim a due process violation in that she relied on the Social Security Administration regulation or that its breach affected her conduct since her failure to file annual income reports and her receipt of benefits occurred long before the agency breached its own rule.[8] On this basis, we rejected analogous claims in *United States v. McInnis*, 601 F.2d 1319 (5th Cir. 1979) (holding that we will not enforce the *Petite* policy, barring a federal trial after state prosecution for the same acts without compelling reason because the policy only sets internal guidelines for the Justice Department) and in *Kirkland Masonry, Inc. v. Commissioner of Internal Revenue*, 614 F.2d 532 (5th Cir. 1980) (holding that an Internal Revenue Service Handbook directive to agency employees does not suffice to create a duty to the public). Hence, we conclude that § 5502(c) of the Social Security Claims Manual reposed no right of adherence in a benefit recipient and that the Social Security Administration's denial of a preadjustment review, despite its offer to Cormier of such review and her acceptance of that offer, did not mandate dismissal of the information by the court below.

### Sufficiency of Evidence

Cormier's second ground of appeal is that insufficient evidence supported her conviction. 42 U.S.C. § 408, under which Cormier was convicted, provides:

Whoever ... (d) having knowledge of the occurrence of any event affecting (1) his initial or continued right to any payment under this subchapter ... conceals or fails to disclose such event with an intent fraudulently to secure payment either in a greater amount than is due or when no payment is authorized ... shall be guilty of a misdemeanor and upon conviction thereof shall be fined not more than $1,000 or imprisoned for not more than one year, or both.

---

**7.** The manual is an internal publication and is not published in either the Federal Register or the Code of Federal Regulations.

**8.** Cormier filed an annual income report in 1978, after being put on notice of the agency's investigation by the Integrity Branch interview.

Recently, in *United States v. Phillips*, 600 F.2d 535, 536 (5th Cir. 1979), we defined the government's burden in proving "fraudulent intent" under § 408(d):

First, the government must show that the defendant knew that he was legally obligated to disclose certain information. Second, the government must prove that the defendant knew that by withholding the information he would receive greater payments than he was entitled to. In other words, a defendant is not guilty under § 408(d) unless he is aware both that he is deceiving the government and that the government will pay out more money because of his deception.

■ At trial, the government presented evidence showing that Cormier knew that she was required to file annual income reports: her original application for benefits notified her of this requirement, and Cormier's job since 1974 as a service representative entailed informing Social Security applicants and beneficiaries of this continuing rule. Thus, Cormier concedes that the government proved the first prong of *Phillips*. She contends, however, that the government presented insufficient evidence to prove the second *Phillips* requirement: that she knew that by failing to file annual income reports she would receive greater benefits than those to which she was entitled. We disagree.

■ The government's evidence in support of the second *Phillips* prong included Cormier's original 1963 application for benefits advising her of the requirement that she file an annual income report in any year in which her income exceeded $1,200[9] and immediately report any other event that might affect her continued eligibility to receive benefits.[10] There was also evidence that Cormier's benefits had been affected twice by changes in her earnings[11] and that she had been notified by letter in 1972 when Ronald's eligibility terminated that the "family maximum" no longer applied and that she would not be entitled to benefits if she earned above the permissible amount. Moreover, throughout the trial the government emphasized that Cormier had occupied the position of service representative since January 1974, for which she received several weeks' initial instruction and continuous on-the-job training concerning annual report requirements and the workings of the survivors insurance benefits system. One of her duties during this period was to interview members of the public regarding "post-entitlement matters," those events, such as returning to work or remarriage, that might affect a recipient's continued eligibility. Although she referred such claimants to a claims representative for a final determination, Cormier made the initial calculation. In this capacity she had consistently received "above-average" evaluations and had increased in grade level from GS–5 to GS–7, Step 4, and in salary from $8,328 to $14,316.

The government also entered into evidence the tear-off portion of the request for reconsideration and/or waiver that Cormier had returned and upon which she had noted her explanation for failing to file.[12] Although the prosecutor initially sought to introduce the paper as "essentially an admission that there was an overpayment made," the magistrate, after examining the document, stated: "There doesn't appear to be an admission of an overpayment but an explanation of why she did what she did." In this guise it was admitted.

---

9. This amount has since been increased to $2,400. *See* note 3 *supra*.

10. The application specifically listed these events.

11. *See* note 6 *supra*.

12. The portion of this form "to be completed by all applicants for waiver" denoted "WITHOUT FAULT STATEMENT," stated:

1. Explain fully why you thought the incorrect payment was due you and why the overpayment was not your fault.

Cormier wrote:

I sincerely and truly believed the information given to me by the mgr (sic) and confirmed by technical help was accurate. I was told as long as I had two children on the rolls, family max (sic) would apply and I could receive benefits, so I continued to believe I was entitled.

Cormier's defense consisted of two lines of attack. First, she claimed that she had been told by a claims representative, upon returning to employment with the Social Security Administration in 1973, that she would continue to be entitled to benefits, despite her income, as long as two of her children remained beneficiaries. Cormier could remember neither the representative's name nor gender at trial. Secondly, she presented two Social Security Administration employees,[13] who testified that the family maximum formula was complicated and would not necessarily be well understood by a service representative.[14]

Viewing the evidence in the light most favorable to the government as we must, *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), we are not persuaded by Cormier's argument that the government presented insufficient evidence to show fraudulent intent, i. e., that she knew that by failing to report her income she would receive payments to which she was not entitled. In *Phillips, supra*, we held that the government failed to prove fraudulent intent under vastly different circumstances. Phillips, a cement truck driver, suffered from atriofibrillation, which forced him to stop working. Although he was receiving Social Security disability benefits, he resumed sporadic work during a period of improved health. When the Social Security Administration discovered that he had earned in excess of the allowable monthly level, it prosecuted for violation of § 408(d). In holding that the government had failed to satisfy its burden of proving intent to defraud, we noted the extraordinary circumstances that characterized Phillips' case. Phillips had a sixth grade education; he testified that although he signed the benefits application notifying him of the reporting requirement, he did not read it; he suffered from an "ambiguous" dis-

ability that, at infrequent and brief intervals, allowed him to earn the same amount as he had earned prior to his illness; because of this, a Social Security representative had concluded that he was entitled to the benefits he received during those periods of work. Cormier's circumstances are at the other end of the spectrum. Not only had she read her application, but countless times each day she advised others of these very requirements and of the events that would affect their continued eligibility. The magistrate could reasonably conclude that she knew, as a result of her failure to report, "[she] would receive greater payments than [she] was entitled to." That is all that *Phillips* requires; the government need not prove that the recipient knew the *precise* amount of the overpayment. Furthermore, the magistrate was able to observe Cormier who testified in her own behalf. His assessment of her credibility, not clearly erroneous, must stand. *Hodgson v. H. Morgan Daniel Seafoods, Inc.*, 433 F.2d 918 (5th Cir. 1970).

■ One further matter requires discussion. The government attempted to introduce as an admission the "tear-off" portion of the request for reconsideration and/or waiver form that Cormier had signed and returned. Over Cormier's objection, the magistrate admitted the document but, as noted *supra*, not as an admission but as "an explanation of why she did what she did." Although during oral argument before this court Cormier's counsel challenged the document's introduction, objection to the evidentiary ruling was not preserved as a ground of appeal. Therefore, we may consider it *sua sponte* only if its introduction constituted plain error, F.R.Crim.P. 52(b),[15] seriously affecting the fairness, integrity or public reputation of judicial proceedings. *United States v. Atkinson*, 297 U.S. 157,

---

**13.** One of these was a claims representative; the other had been. Claims representatives are often several grade levels higher than service representatives.

**14.** She also presented testimony to the effect that she spent half of her time dealing with Medicare recipients.

**15.** F.R.Crim.P. 52(b) provides:

*Plain Error.* Plain error or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.

160, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1936). *See, e. g., United States v. Adams*, 634 F.2d 830 (5th Cir. 1981). Moreover, plain error under Rule 52(b) means error both obvious and substantial, *Sykes v. United States*, 373 F.2d 607 (5th Cir. 1966), *cert. denied*, 386 U.S. 977, 87 S.Ct. 1172, 18 L.Ed.2d 138 (1967), and Rule 52(b) should be invoked only where exceptional circumstances make it necessary to avoid a clear miscarriage of justice. *Mims v. United States*, 375 F.2d 135 (5th Cir. 1967). Applying these standards to the instant case, we find that the magistrate's admission of the form was neither obvious nor substantial error, nor a clear miscarriage of justice.

Although we strongly disapprove of the government's tactics—leading Cormier to believe that it would reconsider its overpayment determination and, if requested, consider waiving the amount overpaid; instead denying both requests, and attempting to introduce the form as an admission—we conclude that admission of the document did not constitute plain error. This was a bench trial, and the magistrate made clear that he did not admit the document as an admission but only as evidencing Cormier's explanation of "why she did what she did," the same explanation that she had given in direct testimony. Since the facts shown by the document were before the court through properly admitted evidence, error, if any, was harmless. *Daniel v. United States*, 268 F.2d 849 (5th Cir. 1959). *See also* 3 Wright, Federal Practice and Procedure § 854.[16]

Moreover, the document played no subsequent role in the trial. The prosecutor did not mention it in summation, concentrating instead on Cormier's "background and experience"—her duties as a Social Security service representative and the fact that she had been notified in 1972 that subsequent employment would adversely affect her right to benefits. Likewise, in affirming the magistrate's verdict of guilt, the district court emphasized Cormier's job responsibilities and experiences.

**16.** Even had the court admitted the document as an admission of overpayment, that would not have adversely affected Cormier's case.

We conclude that the conviction was supported by sufficient evidence. Accordingly, we AFFIRM.

The parties had stipulated prior to trial that there had been an overpayment and its amount.