**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Carlos SOLOMON and Katrina F. Solomon, Defendants–Appellants.**

No. 87–8065.

United States Court of Appeals,
Eleventh Circuit.

Oct. 12, 1988.

**1574**

Michael K. McIntyre, Atlanta, Ga., for Carlos Solomon.

Suzanne Hashimi, Stephanie Kearns, Federal Defender Program, Inc., Atlanta, Ga., for Katrina F. Solomon.

William L. McKinnon, Asst. U.S. Atty., Atlanta, Ga., for plaintiff-appellee.

Before HILL and EDMONDSON, Circuit Judges, and WISDOM *, Senior Circuit Judge.

WISDOM, Senior Circuit Judge:

The defendants, Carlos Solomon, a former Atlanta police officer, and his wife, Katrina Solomon, were convicted by a federal jury of conspiracy to possess with intent to distribute hydromorphone, commonly known as dilaudid, in violation of 21 U.S.C. § 841(a), and of unlawfully obtaining dilaudid by means of forged prescriptions and misrepresentations.

On appeal, the Solomons contend that there are three grounds for reversal of

---

* Honorable John Minor Wisdom, Senior U.S. Circuit Judge for the Fifth Circuit, sitting by desig- nation.

their convictions. We reject these contentions.

## I. Instruction on the presumption of innocence

■ The defendants contend first that the trial court erred, after closing arguments, in failing to instruct the jury on the defendants' presumption of innocence. Because defense counsel neither requested such an instruction nor objected to the instructions given by the trial judge, the standard for review under Fed.R.Crim.P. 52(b)[1] is whether the trial court judge committed plain error. Plain errors are those seriously affecting the "fairness, integrity, or public reputation of judicial proceedings".[2] Furthermore, the error must be both obvious and substantial.[3] Rule 52(b) is applied in exceptional circumstances where needed to prevent a miscarriage of justice.[4]

■ As stated in *United States v. Thaxton*,[5] the jury instruction on the presumption of innocence serves a two-fold purpose. First, it reminds the jury that the prosecution has the burden of persuading the factfinder of the defendant's guilt beyond a reasonable doubt.[6] Second, " 'it cautions the jury to put away from their minds all the suspicion that arises from the arrest, the indictment, and the arraignment, and to reach their conclusion solely from the legal evidence adduced.' "[7] Thus, in determining whether the trial court's failure to repeat the instruction at the close of the case rises to the level of plain error we consider the jury instructions as a whole in the light of the functions of the presumption of innocence.

After the jury was sworn and before any testimony was heard, the trial judge instructed the jury in part as follows:

I want to caution you [that] the fact that the grand jury has returned a bill of indictment against these defendants is not evidence, [or] a hint or inference of guilt.

. . . . .

I further caution you [that] each of these defendants come[s] into court with the presumption of innocence in their favor. That is they are presumed innocent of any offense there might be until the government produces evidence which is sufficient to show guilt beyond a reasonable doubt and the government has that burden.

Record, Vol. 2 at 10–11.

In his final instructions the trial judge told the jury:

The law does not require the defendants to prove innocence or produce any evidence at all if they don't want to. The return of the indictment places upon the government the burden of proving each of the defendants guilty beyond a reasonable doubt and if it fails to do so, then you must find each of the defendants not guilty.

Record, Vol. 6 at 709.

The trial judge also warned the jury, "you must base your verdict upon the evidence that I have admitted here in open court." Record, Vol. 6 at 710. In his closing argument the prosecutor remarked to the jury that the "[g]overnment has the burden to establish the defendants' guilt. But the defendants and the defense [do not] have to prove anything. They could

---

1. *United States v. Fernandez,* 496 F.2d 1294, 1297 (5th Cir.1974). Fed.R.Crim.P. 52(b) provides:

 Plain Error. Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.

2. *United States v. Atkinson,* 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555, 557 (1936); *United States v. Cormier,* 639 F.2d 1177, 1182–83 (5th 1981).

3. *Sykes v. United States,* 373 F.2d 607 (5th Cir. 1966), *cert. denied,* 386 U.S. 977, 87 S.Ct. 1172, 18 L.Ed.2d 138 (1967).

4. *Mims v. United States,* 375 F.2d 135 (5th Cir. 1967).

5. 483 F.2d 1071 (5th Cir.1973). *See also U.S. v. Dilg,* 700 F.2d 620, 623–24 (11th Cir.1983).

6. *Id.* at 1073.

7. *Id.* (quoting Wigmore on Evidence § 2511, at 407 (3d ed. 1940)).

have ... not put up any evidence...." Record, Vol. 6 at 704.

In *United States v. Fernandez,*[8] the Court of Appeals for the Fifth Circuit dealt with the question whether a trial judge's failure to provide a presumption of innocence charge at any time during the trial amounted to plain error even though the charge had not been requested by defense counsel and there had not been objection to its omission. Had there not been reversible error arising from prejudicial comments made by the prosecutor, the Court was inclined to hold that the omission of the instruction was not plain error under Rule 52(b) because of the court's comprehensive charge regarding the government's burden of proof, the defendant's right to remain silent, and the limited function of an indictment. In the instant case the trial judge instructed the jury on each of these issues after closing arguments, in addition to his charging on the presumption of innocence at the beginning of the trial.

Defendants argue that as in *Fernandez* there were other improprieties that when combined with the omitted presumption of innocence instruction rise to the level of plain error. We find no synergistic effect from these jury instructions[9] that when combined with other allegations of improprieties produces plain error in this case.

Unlike *Fernandez* the trial judge in this case did instruct the jury about the presumption of innocence at the beginning of the trial. The facts in this case are similar to those in this Court's earlier decision in *United States v. Davila–Nater.*[10] In that case before any testimony was heard the trial court briefly instructed the jury on the presumption of innocence.[11] At the conclusion of the case the judge told the jury,

"As I told you in the beginning ... there is no obligation of the defendant to prove his innocence."[12] In *Davila–Nater* the prosecutor also referred to the presumption of innocence in his opening argument. The Court found no reversible error. Similarly, here the trial court gave an instruction on the presumption of innocence shortly after the jury had been sworn. And, as already pointed out, after closing arguments the judge, although he did not specifically refer to that part of his opening charge, reminded the jury that "[t]he law does not require the defendant to prove innocence or produce any evidence at all...." The prosecutor's statement in his closing argument that the defendants did not have to prove anything bolstered the impact of the court's charge.

This case is distinguishable from *United States v. Dilg,*[13] relied on by the defendants. In that case the trial court instructed a jury venire about the presumption of innocence before the trial began but did not repeat the instruction at any time during the trial. Moreover, the Court found that defense counsel adequately objected to the failure to charge the jury on the presumption of innocence. In that case, we did not have to decide whether the omission of the instruction rose to the level of plain error. Applying a lower standard, we found that the lack of such an instruction at any time during the trial presented a risk that the jury did not consider the presumption of innocence; this risk warranted a new trial. Our concern in *Dilg* stemmed in part from the trial court's failure to caution the jury to reach its conclusion solely from the evidence adduced at trial. In the present case, however, during its final jury instructions the court instructed the jury, "you

---

8. 496 F.2d 1294, 1296–98 (5th Cir.1974). Decisions of the Court of Appeals for the Fifth Circuit, before its division of the circuit in 1981, were adopted as precedent by the Court of Appeals for the Eleventh Circuit in its en banc decision, *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981). *See also, Stein v. Reynolds Securities, Inc.,* 667 F.2d 33 (11th Cir.1982).

9. In *Fernandez* the Court found that the trial judge's complete failure to instruct the jury on the presumption of innocence coupled with several uncorrected prejudicial comments by the prosecutor rose to the level of plain error even though each error independently probably would not have. 496 F.2d at 1303.

10. 474 F.2d 270 (5th Cir.1973).

11. *Id.* at 284.

12. *Id.*

13. 700 F.2d 620 (11th Cir.1983).

must base your verdict upon the evidence that I have admitted here in open court." Record, Vol. 6 at 710.

In the light of the instruction on the presumption of innocence given at the beginning of the trial, the court's reminder at the end that the defendants do not have to prove their innocence or produce any evidence, and the court's warning that only the evidence admitted at trial should be considered, we conclude that the functions of the presumption of innocence instruction set forth in *Thaxton* were minimally served in this case.[14] Considering all of the court's other instructions, including its instruction that the indictment is not evidence of guilt and its extensive instructions regarding reasonable doubt and burden of proof,[15] we conclude that the court's error was not plain and substantial, and has not materially prejudiced the defendants. Thus applying the standard of Rule 52(b), reversal of the defendants' convictions on this ground is not warranted.

## II. Instruction on the credibility of witnesses

 Defendants also contend that the trial court erred because it provided inadequate jury instructions regarding the credibility of one of the government's chief witnesses, Patricia Caldwell. Specifically, the defendants argue that reversal is required because the court failed to instruct the jury that the credibility of this witness should be viewed with suspicion: she was an admitted drug addict and an accomplice who was given immunity from prosecution under a plea bargain agreement. Because the defendants did not request these instructions nor object at trial to the court's credibility instructions, these assignments of error must also be evaluated using the plain error standard of Rule 52(b).[16]

Rule 52(b) is a backstop protection against substantial injustice that might otherwise result from application of the usual rule, Fed.R.Crim.P. 30. That rule prohibits an appellate level complaint against a trial court's failure to furnish a particular jury instruction in absence of a request or objection at trial.[17] An appellant asking the Court to reverse his conviction because of an omitted jury instruction must demonstrate that when considered in its entirety, the charge was so deficient that there is a "likelihood of a grave miscarriage of justice"[18] or point to an error so obvious that failure to notice it would seriously affect the fairness, integrity, or public reputation of judicial proceedings.[19] In reviewing the trial court's jury instructions for plain error, the "touchstone is fundamental fair-

---

14. We are mindful, however, that the version of Rule 30 in effect at the time of the defendants' trial directed the trial judge to instruct the jury *after* closing arguments. Although the court's presumption of innocence instruction may not have fully satisfied this technical requirement, the instructions, as a whole were in compliance with the Rule. Moreover, we note that Rule 30 was amended effective August 1, 1987 to provide greater discretion to the trial court. The new wording states:

> The court may instruct the jury *before or after* the arguments are completed or at both times. Fed.R.Crim.P. 30 (emphasis added).

15. The court cautioned the jury regarding the indictment's lack of indicia of guilt both at the outset of the trial and in its final instructions. In its preliminary instruction the court told the jury that the government bears the burden of proving the defendants' guilt beyond a reasonable doubt. This instruction was repeated at the conclusion of the trial, and the court then explained the burden of proof and the term "reasonable doubt". Record, Vol. 6 at 709–710.

16. *See, e.g., United States v. Nabrit,* 554 F.2d 247, 248 (5th Cir.1977).

17. *United States v. Jones,* 673 F.2d 115, 118–19 (5th Cir.) (citing *Tillery v. United States,* 411 F.2d 644 (5th Cir.1969)), *cert. denied,* 459 U.S. 863, 103 S.Ct. 140, 74 L.Ed.2d 119 (1982); *Williamson v. United States,* 332 F.2d 123 (5th Cir. 1964).

18. *United States v. Varkonyi,* 645 F.2d 453, 460 (5th Cir.1981). We observe that courts of appeals in other circuits also consider the extent to which credibility problems are revealed during cross-examination or closing arguments. *See, e.g., United States v. McCabe,* 720 F.2d 951, 955 (7th Cir.1983); *United States v. Hopkins,* 518 F.2d 152, 155 (3d Cir.1975).

19. *United States v. Atkinson,* 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555, 557 (1936); *United States v. Cormier,* 639 F.2d 1177, 1182–83 (5th Cir.1981).

ness".[20]

■ The failure to give an unrequested instruction cautioning the jury to examine and weigh with a high degree of care the credibility of an accomplice/informer or drug addict may constitute plain error if in the circumstances the omission is prejudicial or impairs the defendant's ability to present an effective defense. For example, in *United States v. Garcia*,[21] this Court held that it was plain error for the trial court not to give a cautionary instruction with respect to an accomplice/informer when the only credibility charge given was general in nature; the witness's testimony was totally uncorroborated and was contradicted; and the witness was paid an extraordinarily high amount to act as an informer.[22]

A reversal under the plain error standard is not warranted when an omitted cautionary instruction does not deprive the defendant of a fair trial or significantly prejudice

his defense. In *United States v. Shearer*,[23] we held that the trial court's refusal to give a requested instruction on the credibility of a perjurer was not reversible error. In that case, however, the court gave cautionary instructions adequately alerting the jury to consider a particular witness's testimony with extra caution.[24] The trial judge also had instructed the jury generally on witness credibility, impeachment, and informant testimony, and the witness's perjury had been referred to in defense counsel's closing argument.[25] This Court concluded that the jury instructions, as a whole, adequately protected the defendant's interests.[26]

■ In the present case the trial court gave a general instruction on credibility,[27] told the jury to consider the credibility of a convicted felon,[28] and specifically cautioned the jury concerning the credibility of Patricia Caldwell, the government's chief witness on the conspiracy charge.[29] The court

**20.** *United States v. Collins*, 472 F.2d 1017, 1019 (5th Cir.1972), *cert. denied sub nom. Branch v. United States*, 411 U.S. 983, 93 S.Ct. 2278, 36 L.Ed.2d 960 (1973); *United States v. Garcia*, 528 F.2d 580, 588 (5th Cir.), *cert. denied*, 429 U.S. 898, 97 S.Ct. 262, 50 L.Ed.2d 182 (1976).

**21.** 528 F.2d 580, 587–88 (5th Cir.), *cert. denied*, 429 U.S. 898, 97 S.Ct. 262, 50 L.Ed.2d 182 (1976).

**22.** The Court concluded that, "[w]ithout the guidance of a carefully phrased instruction by the trial court, the jury was ill-equipped to reach a considered and fair verdict ...". *Id.* at 588. *See also Tillery v. United States*, 411 F.2d 644, 648 (5th 1969) (holding that it was plain error for the court to fail to warn the jury about credibility problems with an accomplice's testimony when the testimony was crucial, extremely unreliable, and comprised the sum total of the evidence against the defendant amounted to plain error).

**23.** 794 F.2d 1545 (11th Cir.1986).

**24.** *Id.* at 1551–52.

**25.** *Id.* at 1551.

**26.** *Id.* at 1552. *See also United States v. Rodriguez*, 498 F.2d 302, 307–08 & n. 1 (5th Cir.1974).

**27.** Record, Vol. 6 at 712–13. The court instructed the jury as follows:

You must decide for yourselves whether you believe what the witnesses had to say or any individual witness had to say....

In deciding whether you believe or do not believe any witness, let me suggest to you certain questions that you might ask yourself. Ask yourself whether or not the witness impressed you as one who was telling the truth? Did the witness have any particular reason not to tell the truth in testifying? Did the witness have a personal interest in the outcome of the case? ... Was there any difference in the testimony of the various witnesses? That is, were there things that corroborated the testimony of a witness or contradicted the testimony of a witness? ... You should also ask yourself whether there has been evidence tending to prove that a witness testified falsely concerning some important fact or whether there was evidence that some other time the witness said or did something or failed to do something which was different from the testimony that witness gave before you during the trial.

**28.** The trial judge instructed the jury, "[t]he fact that a witness has been convicted of a felony offense or [of] a crime involving dishonesty or false statement is another factor you may consider in deciding whether you would believe the testimony of witness". Record, Vol. 6 at 713.

**29.** Regarding the credibility of Patricia Caldwell's testimony the court instructed the jury as follows:

Now the testimony of some witnesses must be considered with more caution than the testimony of other witnesses. The witness Patricia Caldwell who was called and testified

warned that Caldwell's testimony must be scrutinized more than that of other witnesses: she had entered into a plea bargain with the government[30] and had been granted use and derivative use immunity for her testimony.[31] The record shows that the court did not additionally caution the jury with respect to Caldwell's credibility as an accomplice or a drug addict. As a general rule these charges should be made to the jury because of the inherent unreliability of such witnesses.[32] Considering the instructions given by the trial judge in their entirety, however, we are unable to conclude that the omission is plain error. The warnings given, although somewhat sparse, alerted the jury to the potential problems with the credibility of Caldwell's testimony.[33] In reaching this conclusion, we also are mindful that on several occasions during the trial, Caldwell's drug addiction was brought to the jury's attention.[34] Indeed, Caldwell admitted her addiction on the witness stand. There were also references throughout the trial to Caldwell's role as an accomplice, her prior convictions, her plea bargain, and the grant of immunity. Had her testimony been totally uncorroborated or had it suggested internal inconsistency, additional cautionary instructions

would have been more important. Her testimony, however, regarding the substantive charges was largely corroborated by other witnesses' testimony, and some corroborating evidence supported Caldwell's testimony about the conspiracy. We find that considering the record as a whole, the omitted instructions did not mislead the jury nor significantly impair the defendants' defenses.[35] Plain error has not been established.

### III. Conflict of interest

 Finally, defendant Katrina Solomon contends that her conviction should be reversed because defense counsel's joint representation of the defendants constituted an actual conflict of interest that violated her sixth amendment right to effective assistance of counsel. We disagree.

The magistrate designated to hear pretrial matters conducted a hearing in accordance with Fed.R.Crim.P. 44(c)[36] and *United States v. Garcia,*[37] to inquire whether counsel's joint representation would create an impermissible conflict and whether the defendants knowingly and intelligently waived their right to separate representa-

in this case is one such witness. You will recall that she was granted what is called immunity for her testimony....

You have also heard evidence that the government has reached a negotiated plea agreement with Caldwell on charges other than those contained in the indictment....

Let me caution you that the fact she has entered into a negotiated plea on other charges is acceptable in the law.... So while a witness such as Ms. Caldwell may be entirely truthful when testifying, you should consider that testimony with somewhat more caution than the testimony of other witnesses. Record, Vol. 6 at 714–15.

**30.** *Id.*

**31.** *Id.*

**32.** *See, e.g., United States v. Kinnard,* 465 F.2d 566, 570 (D.C.Cir.1972).

**33.** Other circuits also consider the cumulative effect of the trial court's particular instructions. *See, e.g., United States v. Smith,* 692 F.2d 658, 661 (10th Cir.1982) (Defendant was not prejudiced by court's refusal to give addict instruction because of other specific cautionary in-

structions given.), *cert. denied,* 459 U.S. 1200, 103 S.Ct. 1183, 75 L.Ed.2d 431 (1983).

**34.** Record, Vol. 2 at 17–18 (opening statement of prosecutor); Record, Vol. 2 at 73 (On direct examination Caldwell admitted her addiction.)

**35.** For a case somewhat factually similar see, *United States v. Jones,* 673 F.2d 115, 120–21 (5th Cir.), *cert. denied,* 459 U.S. 863, 103 S.Ct. 140, 74 L.Ed.2d 119 (1982).

**36.** Federal Rule of Criminal Procedure 44(c) provides in part:

Whenever two or more defendants ... are represented by the same retained or assigned counsel ... the court shall promptly inquire with respect to such joint representation and shall personally advise each defendant of the right to the effective assistance of counsel, including separate representation. Unless it appears that there is good cause to believe no conflict of interest is likely to arise, the court shall take measures as may be appropriate to protect each defendant's right to counsel.

**37.** 517 F.2d 272 (5th Cir.1975).

tion.[38] After this hearing the magistrate entered an order stating that the defendants had waived any conflict of interest that might result from their joint representation by counsel. The defendant contends that despite this hearing she did not waive her right to conflict-free representation.

On the first day of the trial she told the court that defense counsel representing her husband did not represent her.[39] After discussing this matter in private with counsel, however, she informed the court that she wanted to proceed with the same attorney and rejected the court's offer to sever the cases and appoint separate counsel. Nevertheless, on appeal she argues that she did not waive her right to separate counsel, for failure of the court to conduct a second Rule 44(c) hearing. She also points to at least two examples of the attorney's conduct that allegedly reveal an actual conflict of interest. The first is defense counsel's failure to object to the prosecutor's comment during closing argument that Mrs. Solomon's husband was motivated partly by the desire to support his wife's drug habit and that some people might say that she was responsible for her husband's downfall.[40] Second, she asserts that because there was substantially more evidence against her husband than against her, separate counsel likely would have employed a "shifting of blame" defense that was precluded by joint representation.[41] She also argues that defense counsel's trial strategy subtilely favored her husband.

The record fails to disclose that either the magistrate or trial judge was aware of any potential conflict of interest before the trial began. The magistrate held a pretrial hearing at which he inquired about possible conflicts and warned the defendants of many of the dangers of joint representation. We find that the pretrial hearing substantially complied with the procedure enunciated in Rule 44(c) and *United States v. Garcia.* Although the district court did not follow the suggestion in *Garcia* that the court "endeavor to have each defendant personally articulate in detail his intent to forego"[42] his right to separate representation, the court's in-depth discussion of potential conflicts coupled with its questions to and responses from the defendants adequately protected the defendant's sixth amendment rights.[43] We note however, that,

> the mere fact that a rule 44(c) inquiry was conducted in the early stages of the case does not relieve the court of all responsibility in this regard thereafter. The obligation placed upon the court by rule 44(c) is a continuing one, and thus in a particular case further inquiry may be necessary on a later occasion because of new developments suggesting a potential conflict of interest.[44]

Given this continuing obligation the question arises whether the court should have inquired further when on the first day of the trial defendant Katrina Solomon complained of a conflict. The record shows that in response to the court's question whether Mr. and Mrs. Solomon had conflicting defenses, counsel for the defendants answered negatively. The court then had the following exchange with defendant Katrina Solomon:

> THE COURT: What is the basis of your worry with Mr. Granade, Mrs. Solomon?
>
> MRS. SOLOMON: He's not representing me. He's representing my husband not me. He will tell me one thing and turn around and do ten others. He listens to

---

**38.** *See* Appendix.

**39.** Record, Vol. 2 at 5.

**40.** Appellant's Opening Brief (Katrina Solomon), at 7–8, 26; Record, Vol. 7 at 8, 15.

**41.** Appellant's Opening Brief (Katrina Solomon), at 23–24.

**42.** 517 F.2d at 278.

**43.** The notes of the Advisory Committee on Rules state, "Rule 44(c) does not specify what particular measures must be taken. It is appropriate to leave this within the court's discretion, for the measures which will best protect each defendant's right to counsel may well vary from case to case."

**44.** Fed.R.Crim.P. 44(c), Notes of Advisory Committee on Rules.

my husband and what my husband says and not [to] what I have said.[45]

The record shows that Mrs. Solomon was unhappy that her attorney had not subpoenaed her mother to appear as a witness and that she wanted to be more informed about what was going on. Mrs. Solomon flatly rejected the court's offer to appoint separate counsel and have her trial later. She asked to go over something with counsel, and after doing so the court asked her, "[A]re you satisfied now with Mr. Granade representing you?" Her answer was "yes". Considering the nature of the defendant's complaints and her failure to assert that her and her husband's defenses were at odds in any way, we find that the court made an adequate inquiry and properly offered to have separate counsel appointed. In the circumstances the court did not err by allowing the trial to proceed rather than severing the case and forcing upon the appellant separate counsel. We note that at no other time during the course of the trial did Mrs. Solomon object to joint representation.

■ Even giving Mrs. Solomon the benefit of the doubt on the issue of a knowing and intelligent waiver of the right to separate representation, to warrant reversal of her conviction, the defendant "must demonstrate that an actual conflict of interest adversely affected [her] lawyer's performance".[46] Potential or hypothetical conflicts are insufficient; the defendant must be able to point to specific instances in the record showing that defense counsel actively represented conflicting interests.[47] Moreover, the defendant "must make a factual showing of inconsistent interests and must demonstrate that the attorney made a choice between possible alternative courses of action, such as eliciting evidence helpful to one client but harmful to the other."[48]

Apparently as a matter of court strategy, defense counsel utilized a "united front" defense on behalf of Mr. and Mrs. Solomon. This consisted of a denial of any criminal activity in connection with their purchases of dilaudid or of participation in a criminal conspiracy to distribute that drug. On appeal, Mrs. Solomon contends that separate counsel would have employed a "shifting of blame" strategy because of the stronger evidence against her husband. The contention of an actual conflict based on an united front defense has been considered and rejected on previous occasions.[49] When such a contention is made our inquiry focuses on whether an alleged conflict actually obstructed the use of a *plausible* strategy or defense.[50]

■ Mrs. Solomon argues that independent counsel could have pointed out the disparity in the evidence against her and her husband and thus shift the blame to Mr. Solomon as being the manager and primary actor in the conspiracy. This argument fails on several grounds. First, Mrs. Solomon's defense was that she was not involved in a criminal conspiracy and did not seek to obtain dilaudid illegally.

---

45. Record, Vol. 2 at 5–6.

46. *Lightbourne v. Dugger,* 829 F.2d 1012, 1023 (11th Cir.1987) (quoting *Cuyler v. Sullivan,* 446 U.S. 335, 346, 100 S.Ct. 1708, 1718, 64 L.Ed.2d 333, 346 (1980)), *cert. denied sub nom. Lightbourne v. Florida,* 465 U.S. 1051, 104 S.Ct. 1330, 79 L.Ed.2d 725 (1984).

47. *Cuyler v. Sullivan,* 446 U.S. 335, 350, 100 S.Ct. 1708, 1719, 64 L.Ed.2d 333, 347; *United States v. Mers,* 701 F.2d 1321, 1328 (11th Cir.), *cert. denied,* 464 U.S. 991, 104 S.Ct. 481, 78 L.Ed.2d 679 (1983).

48. *United States v. Mers,* 701 F.2d 1321, 1328 (11th Cir.1983) (citations omitted), *cert. denied,* 464 U.S. 991, 104 S.Ct. 481, 78 L.Ed.2d 679 (1983). *See also United States v. Risi,* 603 F.2d 1193, 1195 (5th Cir.1979) ("[T]here must be a significant divergence of the interests of the

jointly represented person in order for an actual conflict to exist.").

49. *See, e.g., United States v. Carter,* 721 F.2d 1514 (11th Cir.) *cert. denied,* 469 U.S. 819, 105 S.Ct. 89, 83 L.Ed.2d 36 (1984); *United States v. Mers,* 701 F.2d 1321, 1330–31 (11th Cir.), *cert. denied,* 464 U.S. 991, 104 S.Ct. 481, 78 L.Ed.2d 679 (1983); *United States v. Kranzthor,* 614 F.2d 981, 982–83 (5th Cir.1980), *Government of the Canal Zone v. Hodges,* 589 F.2d 207, 210 (5th Cir.1979), *cert. denied,* 441 U.S. 948, 99 S.Ct. 2173, 60 L.Ed.2d 1052 (1979).

50. *United States v. Carter,* 721 F.2d 1514, 1537 (11th Cir.1984) (citing *Foxworth v. Wainwright* 516 F.2d 1072, 1080 (5th Cir.1975)), *cert. denied,* 469 U.S. 819, 105 S.Ct. 89, 83 L.Ed.2d 36 (1984).

One can infer that Mrs. Solomon and her attorney thought total denial was a superior strategy to that of shifting the blame. Second, although failure to adopt a shifting of blame strategy may give rise to an actual conflict of interest, the defendant has not demonstrated that this strategy was realistically available to trial counsel.[51] The record does not reveal a great disparity of evidence against the co-defendants. The only count they were mutually charged and convicted on was conspiracy to possess with intent to distribute dilaudid. Although there was slight additional circumstantial evidence against Carlos Solomon,[52] much of the government's evidence against both defendants came from Patricia Caldwell's testimony. Caldwell implicated both defendants in the conspiracy. Moreover, since evidence was introduced concerning Mrs. Solomon's drug-related problems, it is conceivable that she benefitted by being tried with her husband, a former police officer with no prior criminal record. There is no evidence that the defendants had inconsistent defenses or that another plausible strategy was available to trial counsel.[53]

Defense counsel's failure to object to comments made by the prosecutor in closing argument may not have been the most prudent course of action but it does not rise to the level of active representation of conflicting interests. In short, Mrs. Solomon is unable to show that her attorney impaired her defense for the benefit of her husband's or that an actual conflict of interest existed.

## IV. Conclusion

We AFFIRM the defendants/appellants' convictions on each count charged in the indictment.

**51.** *See United States v. Mers,* 701 F.2d 1321, 1331 (11th Cir.), *cert. denied,* 464 U.S. 991, 104 S.Ct. 481, 78 L.Ed.2d 679 (1983).

**52.** This evidence included bank records showing substantial deposits and receipts for extraordinary purchases during the period of the conspiracy.

## APPENDIX

The hearing consisted partially of the following:

THE COURT: Rule 44 of the Federal Rules of Criminal Procedure Provides that when two defendants are both represented by the same lawyer, that the court must advise each of them that they have a right to have independent counsel that would advise them separately from any other defendant in the case. [The court then read Rule 44(c)].

Now, it's my duty to advise each of you that you have a right to be represented by a lawyer of your own choice that is different from the lawyer representing the other defendant in this case. Do you understand your rights in that connection, Mr. Solomon?

MR. SOLOMON: Yes, Sir.

THE COURT: Ms. [Solomon]?

MS. SOLOMON: Yes.

THE COURT: I have been advised by your counsel that he has discussed this issue with you before and that you have both advised him that you wish to be represented by him even though he represents the other defendant, is that correct, Mr. Solomon?

MR. SOLOMON: Yes, Sir.

\* \* \*

THE COURT: Is that correct, Mrs. Solomon?

MRS. SOLOMON: Yes.

THE COURT: All right. In that connection let me discuss with each of you certain things that might come up at a trial that could be a problem for you if you're represented by the same lawyer....

It could be in joint representation a situation where your lawyer would be inhibited

**53.** In a similar context this Court has focused on whether the conflict between the defendants' interests affects the "essence or core" of their defenses. *See United States v. Berkowitz,* 662 F.2d 1127, 1134 (5th Cir.1981) (determining whether a new trial is required because the trial court failed to sever cases).

or prevented from independent plea negotiations on behalf of you....

And it might later create a problem at sentencing because the government might be willing to make you a recommendation about sentencing as to one and not the other in exchange for testimony or some other pretrial matter that could come up.

\* \* \*

Now, during the trial of the case certain issues can come up that would effect your representation. For example, there might be a tactical reason to waive a jury trial, but he might be prohibited from considering that if he represents both of you....

\* \* \*

Dual representation might prevent your attorney from challenging the admission of evidence that is favorable to one defendant but prejudicial to the other. And for the same reasons dual representation might prevent an attorney from introducing evidence that would be exculpatory as to one defendant but inculpatory as to the other, that is, evidence that might help one of you but at the same time hurt the other one.

And it might effect adversely a decision as to whether one of you or both of you might testify at trial in your own defense. And, of course, during the arguments to the jury when your lawyer represents both of you he would probably be denied the opportunity to say one of you was not as guilty as the other one, that is, blame the other co-defendant for actions and crimes that are charged as to the other one.

At sentencing your lawyer might be at a disadvantage in negotiating with the government because full disclosure by one defendant of circumstances or facts which the government might make might damage the other, and as a result there might be a loss of an opportunity to obtain a favorable recommendation or more favorable recommendation should you be convicted and should you be jointly represented at sentencing.

\* \* \*

Do either of you have any questions about the matters that you have discussed? Mr. Solomon?

MR. SOLOMON: No, Sir.

THE COURT: Mrs. Solomon?

MRS. SOLOMON: No, Sir.

THE COURT: Mr. [Granade], do you have any information based on what you know about the case ... that would indicate that you cannot adequately or properly represent both defendants in this case?

MR. GRANADE: There is nothing at this point. No, your honor. I have talked repeatedly with both defendants, and at this point there is no conflicting position in that.

THE COURT: Is counsel for the government aware of any issue that could come up that should be brought to the defendants' attention on the question of joint representation?

MR. MCKINNON: No specific issues. No, Sir.

THE COURT: All right. Mr. Solomon and Mrs. Solomon, do either of you want to ask me any questions about your joint representation in private without your lawyer or the government's lawyer being present?

MR. SOLOMON: No, Sir, I don't.

THE COURT: Mrs. Solomon?

MRS. SOLOMON: No, Sir.

THE COURT: Now, Mr. Solomon and Mrs. Solomon, based on the information that we've discussed in court here today, do you specifically waive any problem you might have that would result from your joint representation by Mr. Granade?

MR. SOLOMON: Yes, Sir.

THE COURT: Mrs. Solomon?

MRS. SOLOMON: Yes, Sir.